

FILED

JUN 2 5 2014

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>DOMINGO BAEZ,<br><br>Defendant/Movant. | Cause No. CR 08-149-BLG-DWM<br>CV 13-145-BLG-DWM<br><br>ORDER DENYING § 2255 MOTION<br>AND DENYING CERTIFICATE OF<br>APPEALABILITY |

This case comes before the Court on Defendant/Movant Baez's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Baez is a federal prisoner proceeding pro se.

On March 24, 2014, the Court entered an order denying all but one of Baez's claims for relief. Trial counsel and the United States were ordered to file documents regarding the remaining claim, and Baez was given an opportunity to respond to their submissions. The remaining claim, Baez's response to counsels' submissions, and Baez's motion to clarify are decided here, as is a certificate of appealability. Following issuance of this Order, the § 2255 motion is closed in this Court.

1

## I. Motion to Clarify

On May 5, 2014, Baez moved the Court to clarify its Order of March 24, 2014. Baez advises that the clarification "should include a description of [the Court's] factual findings, and cite all relevant case law it considered in making its determination, explaining how said case law was applied and how it pertained to each of the grounds defined." Ex Parte Mot. for Clarification (Doc. 362) at 1.[1] Baez also asks why his claims were not fully addressed as he presented them. *Id.* at 1-2.

The Court addressed Baez's claims as it understood them in light of the record of the case and the applicable law. It cannot do otherwise. The Court also entered a written order which adequately explained the Court's reasoning and the authority upon which it was based. Baez's motion for clarification is denied.

## II. Claim B

On March 24, 2014, Baez's Claims A and C through T were denied. Broadly stated, Claim B alleges that Baez did not receive effective assistance of counsel in connection with plea negotiations. Pursuant to Rule 7 of the Rules Governing § 2255 Proceedings, Baez's trial-level counsel[2] were required to submit their files for

---

[1] Baez captioned the motion for ex parte filing because he believed the Order of March 24, 2014, "was an adverse decision that affected me only" and he did not want "any interference from the Prosecution or Defense Counsel involved." As that is not an adequate basis for ex parte filing, the motion was filed in the public record. *See* Mot. Exs. (Doc. 362-1, 362-2).

[2] Baez was represented by Assistant Federal Defender Mark Werner at a combined initial

2

*in camera* inspection, along with an affidavit providing proper authentication and foundation. The United States was required to produce all plea offers discussed with counsel. *See* Order (Doc. 352) at 33-35. Two of the defense attorneys and the United States complied on April 21, 2014. One defense attorney responded eight days late. Baez was given the opportunity to respond to those submissions on or before May 7, 2014. He responded on June 9, 2014.

### A. Baez's Response to Counsels' Submissions

Although Baez's response was more than 30 days late, the Court will consider it.

Baez continues to assert the United States built its case against him and others from what he admitted in his debriefing and grand jury testimony. *See* Mem. Br. in Supp. of Ground B (Doc. 364) at 3, 4; Baez to Morup Apr. 9, 2012, at 1 (Doc. 364-4 at 1). This reiterated belief is consistent with his position throughout the litigation of this case but inconsistent with the facts of the case. *See* Order (Doc. 352) at 19-25; *see also infra* at 14. For example, although Baez believed the prosecution increased its allegation as to drug quantity based on information it obtained from him, *see, e.g.*, Baez to Haddon Mar. 25, 2009, at 1 (Doc. 355-4 at 4), the prosecution increased its allegation as to drug quantity two weeks after the

---

appearance/arraignment. He was represented by Jeffrey Michael for 12 days thereafter. They were not required to respond.

original indictment was filed and a month before Baez debriefed, *see* Second Mot. to Dismiss (Doc. 105) at 2; FBI 302 (Doc. 123-1) at 1; Superseding Indictment (Doc. 14) at 2. The drug quantity was not increased after that. Baez may have given the United States Acevedo's identity, Order (Doc. 352) at 21-22, but, long before Baez debriefed, the United States knew that Baez himself had made 312 calls in nine months to co-conspirators Ramirez and the household eventually identified as Acevedo's. In addition, and also long before Baez debriefed, law enforcement conducted undercover and surveillance operations, made controlled buys, searched the residence of one of Baez's distributors, analyzed Baez's phone records, and ultimately intercepted and recorded phone calls made and received by Baez.[3] Baez's persistent inflation of the scope of the information provided by him alone is counterfactual.

Baez's affidavit in response to counsels' submissions also contains a new

---

[3] Stephanie Morup, Baez's sister, avers that she consulted attorney Solomon Neuhardt and offered to testify for her brother about various things. *See* www.montanabar.org (accessed June 23, 2014) (showing Neuhardt as "disbarred attorney member"). Morup's opinions about what Meyer should have recognized as important are misguided. For instance, Lamonaca's and Camp's activities did not play a pivotal role in Baez's trial. *E.g.*, 1 Trial Tr. (Doc. 257) at 221:3-21; 3 Trial Tr. Doc. 259) at 573:18-574:21. In addition, it is seldom a good idea to call a drug dealer to testify on behalf of one accused of dealing drugs. *See* Mot. § 5K1.1 (Doc. 1) (under seal), *United States v. Lamonaca*, No. CR 09-107-BLG-JDS (D. Mont. filed Apr. 28, 2010) (stating that Lamonaca provided information against Baez); Judgment at 2-3 (Doc. 143), *United States v. Falu-Oliveras*, No. CR 09-21-BLG-RFC (D. Mont. Sept. 25, 2009) (sentencing Camp to 30 months for drug offense). Collazo himself testified that he cooperated with the prosecution to help his girlfriend. 1 Trial Tr. at 227:15-228:9. Collazo also testified about his own interactions with Baez, not about information he only knew because Baez revealed it in his proffer.

claim for relief that must be addressed. Baez claims attorney Steve Haddon was ineffective because he advised Baez to debrief and to testify before the grand jury. Baez Aff. (Doc. 364-1) at 1-2 ¶¶ 2-8, 3 ¶ 12. But Haddon reasonably advised Baez that he likely would obtain significant benefit from debriefing and pleading guilty. Further, Baez did not suffer any legally cognizable prejudice as a result of his debriefing or grand jury testimony. Even if he was "under the impression" that he could debrief, go to trial, and still receive a break at sentencing as a result of his substantial assistance to the prosecution, his misunderstanding did not result in the loss of any protection or benefit he otherwise would have had. As set forth below, the terms of the United States' proposed plea agreements did not meet Baez's requirements. An open guilty plea would have reduced Baez's guideline calculation by three points, *see* U.S.S.G. § 3E1.1, but it also would have triggered a higher statutory minimum and maximum than Baez obtained by standing trial, because the jury found him responsible for less cocaine than the United States charged.

Baez's new claim against Haddon, which is untimely, *see* 28 U.S.C. § 2255(f)(1); *Mayle v. Felix*, 545 U.S. 644, 664 (2005); Order (Doc. 352) at 11, is denied for lack of merit.

### B. The Record of the Plea Negotiations

Regarding Baez's remaining claim that counsel was ineffective in the course

5

of plea negotiations, the documents now before the Court show the following. It is important to bear in mind that Baez stood trial on an Indictment alleging he was responsible for more than 5 kilograms of cocaine. He also faced an Information under 21 U.S.C. § 851 alleging he had four prior felony drug convictions. The drug quantity and multiple prior convictions meant that, if convicted at trial, Baez faced a mandatory minimum sentence of life in prison. 21 U.S.C. § 841(b)(1)(A) & (ii). The jury convicted Baez but found him responsible for a lesser quantity of cocaine: more than 500 grams but less than 5 kilograms. Verdict (Doc. 167) at 1-4. Consequently, the statutory minimum penalty at sentencing was ten years and the maximum was life. Also due to the drop in quantity, Baez's multiple prior convictions did not count against him; only one mattered. 21 U.S.C. § 841(b)(1)(B) & (ii). But the jury's verdict was not known until March 11, 2010. Baez's remaining claim challenges counsels' conduct before trial, in plea negotiations.

In March 2009, AUSA Joe Thaggard e-mailed Baez's counsel at that time, Steve Haddon, the prosecution's "estimate of the amount of drugs that can be readily proven in the case." Thaggard to Haddon Mar. 4, 2009 (Doc. 358-1 at 19-21). Thaggard claimed he could establish, through the recorded calls, controlled buys, and testimony of cooperating witnesses, that Baez was responsible for about 7 kilograms of cocaine. The prosecutor played Calls 174 and 175, both recorded in August 2008, for the jury at trial. 3 Trial Tr. (Doc. 259) at 544:24-547:6. He

6

argued, in the e-mail, that those two calls alone showed Baez was responsible for 4 kilograms of cocaine. With additional testimony resulting from the controlled buys and cooperating witnesses' accounts, as set forth in the e-mail, it was reasonable for counsel to anticipate the United States could prove the conspiracy, and thus Baez, was responsible for over 5 kilograms of cocaine. The fact that the jury did not find that quantity does not make counsels' crediting of the prosecution's e-mail unreasonable. While a reasonable attorney could question whether the jury would find the witnesses sufficiently persuasive to support a finding of 5 kilograms beyond reasonable doubt, a reasonable attorney could not say the possibility was unlikely.

On April 7, 2009, Haddon moved to withdraw as Baez's counsel "upon the grounds a serious and irreconcilable breakdown in the attorney/client relationship has developed." Mot. to Withdraw (Doc. 32) at 1. On April 23, 2009, while the motion to withdraw was still pending, Haddon wrote to Baez, repeating that he believed Baez's interests would best be served by pleading guilty. As Haddon explained, even if Baez rejected the United States' proposed plea agreement, the United States would seek an enhanced penalty on only one of Baez's prior felony drug convictions and would seek to give Baez credit for his cooperation. Haddon stated that, if Baez pled guilty, he might obtain "a sentence in the 8 to 10 year range, or less." Haddon to Baez Apr. 23, 2009, at 2 (Doc. 358-1 at 20). Haddon

7

concluded, "I cannot stress enough I believe it would be a grave mistake to let this opportunity pass. I urge you to strongly consider pleading to the Indictment without a plea agreement." *Id.*[4] Haddon was permitted to withdraw on April 29, 2009. Minutes (Doc. 34); Order (Doc. 35).

On July 20, 2009, attorney Palmer Hoovestal wrote a detailed, 20-page opinion letter to Baez. With it, he included five volumes of exhibits. Chief among these were agents' reports of witnesses' statements against Baez, App. Vol. 1 Tabs 9-22; a DEA analysis of phone calls made to and by Baez from September 1 to November 19, 2007, collected by administrative subpoena, and from April 9 to August 4, 2008, collected by pen register, App. Vol. 2 Tab 24; the applications and orders authorizing interception and recording of Baez's phone calls, App. Vol. 2 Tab 23; and agents' reports of undercover buys and surveillance, App. Vol. 2 Tab 25.[5] Referring to the visit Hoovestal made to Baez in Basin, Wyoming, to discuss a plea offer, Hoovestal's opinion letter stated:

> After some discussion you refused to sign the Plea Agreement and indicated to me that you want to go to trial. I am providing this opinion letter to ensure that you are completely advised of the implications of that decision. Documents supporting this opinion are

---

[4] All three attorneys responded appropriately to the Order, but, for the most part, the documents submitted by Mark Meyer are cited here. As the last attorney to appear for Baez, he had in his possession most of the documents submitted by previous counsel.

[5] The five volumes of the Appendix to Hoovestal's opinion letter of July 20, 2009, are available in paper form only as they are bound and too extensive to scan. Baez's suggestion that these materials are "irrelevant," Mem. Br. (Doc. 364) at 4; Baez Aff. (Doc. 364-1) at 2 ¶ 9, misunderstands the nature of a claim of ineffective assistance of counsel.

> appended hereto in two separate volumes.
>     In summary, my opinion is that the evidence against you is overwhelming and you will be convicted if you go to trial. In that circumstance, you will be subject to a mandatory minimum sentence of life imprisonment. I therefore advise you to take [the] Government's plea offer and continue to cooperate with the Government. That way you can get below the mandatory minimum sentences that the offenses carry under the law.

Hoovestal to Baez July 20, 2009, at 1-2 (Doc. 358-1 at 46-47); *see also id.* at 17-19 ¶ 7 (Doc. 358-1 at 62-64).

On July 28, 2009, Baez responded by explaining that he believed "the government is just screwing with me because I've done everything they've asked of me and more. . . . so it bothers me when I find out that everyone is getting 8 mos., 16 mos., 30 mos., and the government wants to give me 20 yrs." Baez to Hoovestal July 28, 2009, at 1 (Doc. 358-1 at 66). Baez then set forth the terms he was willing to accept: a letter guaranteeing a 40% reduction in his sentence for his cooperation,[6] retention of the right to appeal, the ability to withdraw his plea if the judge did not agree to follow the parties' agreement, and a guilty plea to a limited time frame "since I gave them everything before that time." Baez explained, "I get the 3 point reduction and acknowledgment concerning 5K1.1 as already promised.

---

[6] The "third" proposed plea agreement, which Baez admits he read, *see* Baez Aff. at 3 ¶ 14, stated, "the Defendant has been made specifically aware that Department of Justice policy does not authorize any individual prosecutor to file such a motion or make such a commitment without express written approval of the U.S. Attorney or a Committee of other prosecutors designated and empowered by the U.S. Attorney to approve such a motion." Proposed Agreement (Doc. 356-5) at 15 ¶ 17(a) para. 4; *id.* at 17 ¶ 17(b) para. 4. Every proposed agreement contained the same advisement.

9

... Also I want my criminal history left out of the P.S.I. and I don't want to hear that [the prosecutor] can't do it." Baez directed Hoovestal to "work on" an agreement in those terms from the United States. *Id.* at 3-5 (Doc. 358-1 at 68-70).

On July 31, 2009, Baez was arraigned on the second superseding indictment. It alleged the same crimes against Baez but added two co-defendants, Maurisio Ramirez and Gilberto Acevedo. *See* Second Superseding Indictment (Doc. 45); Minutes (Doc. 49); Docket Entry July 31, 2009 (unsealing indictment as to Baez).

On August 26, 2009, Hoovestal again wrote to Baez. Hoovestal reiterated his professional opinion that Baez would be convicted if he went to trial and, if convicted, he would be sentenced to a mandatory term of life in prison based on his four prior felony drug convictions. Hoovestal to Baez Aug. 6, 2009, at 1 (Doc. 358-1 at 74).

Hoovestal also explained that he could attempt to present a legal defense at trial by asserting that the prosecution violated Baez's derivative-use immunity. *See* Immunity Letter (Doc. 105-1) at 1. As to that issue, Hoovestal pointed out that "the prosecution would have the burden of proving affirmatively that the evidence used is *derived from a legitimate source wholly independent of your 'free talk'* for which you were given use and derivative use immunity." *Id.* at 4 (Doc. 358-1 at 77) (emphasis in original). Hoovestal recommended that Baez "compar[e] the information set forth in your debriefing report with the other debriefings" in order

10

to decide whether the government's evidence came from Baez's debriefing. *Id.*; *see also* Hoovestal to Baez July 20, 2009, App. Vol. 1 Tabs 9-11, 13-15, 18-20, 22 (reports of interviews given by other witnesses before Baez's first interview on Jan. 14, 2009). Hoovestal concluded:

> My gut feeling is that Thaggard will be able to prove his conspiracy by utilizing information that was derived from a legitimate source wholly independent of information you gave them during your "free talk." Accordingly, Judge Shanstrom will very likely deny your Rule 29 motion and you will be convicted. You would then proceed to sentencing without a 5K1.1 motion or a Rule 35 motion and very well may be sentenced to life in prison. You would then have to present the issue to the Ninth Circuit Court of Appeals, and you may lose the appeal. In my view, that is a very big risk to take.

*Id.* at 4-5 (Doc. 358-1 at 77-78).[7] Hoovestal was permitted to withdraw on November 18, 2009. Minutes (Doc. 84); Order (Doc. 87).

On December 30, 2009, the United States extended its last plea offer to Baez's new and last attorney, Mark Meyer. Thaggard to Meyer Dec. 30, 2009, at 1-2 (Doc. 358-1 at 89-90). On January 5, 2010, Baez wrote to Meyer, "I intend on taking this case all the way to trial." Baez to Meyer Jan. 5, 2009, at 1 (Doc. 358-1 at 109). On January 10, 2009, Meyer wrote to Baez, enclosing a copy of the United States' last plea offer. Meyer to Baez Jan. 10, 2009, at 1 (Doc. 358-1 at 111).

Shortly thereafter, Meyer again wrote to Baez:

---

[7] Hoovestal's "gut feeling" was right. *See* Order (Doc. 352) at 19-25 & n.2.

11

> As I indicated yesterday, I am writing this letter to reconfirm to you my opinion that you should accept the recent version of the plea agreement offered by the government, whereby the government agreed to forego seeking to enhance your statutory mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A) and 851. In the alternative, you should plead guilty to the Second Superseding Indictment, without executing a Plea Agreement, which would preserve your right to pursue an appeal. Under either circumstance, a plea agreement would afford you the opportunity, with continued cooperation, to ultimately receive a term of imprisonment of approximately ten years. As we discussed (and as you discussed with your prior counsel) if you proceed to trial and are convicted, you risk receiving a life sentence under 21 U.S.C. § 841(b)(1)(A) and 851.

Meyer to Baez Jan. 28, 2010, at 1 (Doc. 358-1 at 117).

Baez responded:

> I'm writing you to inform you that I have received your advisory letter and although I don't agree with your opinion I have taken it into consideration and have decided to continue with my decision to go to trial.

Baez to Meyer Feb. 4, 2010, at 1 (Doc. 358-1 at 119).[8]

---

[8] On February 22, 2010, Meyer e-mailed Thaggard with another proposed agreement. If the United States had accepted the offer, Baez would admit responsibility for 500 or more grams of cocaine; would not testify against Ramirez and Acevedo; would receive a motion under U.S.S.G. § 5K1.1 based on his grand jury testimony; would avoid an enhancement under 21 U.S.C. § 851; and would retain the right to appeal the sentence. Meyer to Thaggard Feb. 22, 2010, at 1 (Doc. 358-1 at 121). Baez "challenge[s] the veracity" of this e-mail, claiming it was never sent. The dispute is immaterial. If Meyer sent it, the United States certainly did not accept it. If Meyer did not send it, there is no reason to think the United States would have accepted it. *See* Thaggard to Meyer Dec. 30, 2009 (Doc. 356-10) at 1 para. 4 ("the statements provided by the Defendant are hearsay and useless absent the Defendant's willingness to testify at trial against his codefendants."). Even if Baez identified Acevedo for the prosecution, *see* Order (Doc. 352) at 21-22, the United States had no discernible interest in indicting Acevedo except for purposes of obtaining his conviction, whether by plea or by trial. If Baez was not going to help convict Ramirez and/or Acevedo, his prior cooperation was, as the United States said, essentially useless.

## C. Analysis

Baez contends that Meyer's concession of guilt in opening statement[9] "was a refusal by him to seek and/or negotiate a favorable plea . . . based on the fact that I offered and voluntarily cooperated with the Government." Mot. § 2255 (Doc. 344) at 5 ¶ 12B. Elsewhere, Baez says the United States "refus[ed] to consider my voluntary assistance and the benefit the Government received as a result of it" and "refus[ed] to negotiate a favorable deal that reflected my assistance." Mot. § 2255 at 14 ¶ 12L.

Baez claims that, based on his cooperation, counsel could have obtained a plea agreement resulting in a sentence less than the 15 years he ultimately received. In fact, he believes counsel "could have done better" than the United States' last offer "for 10-years with a promise to not file an § 851 information." Baez Aff. at 4 ¶ 15 (referring to Proposed Agreement (Doc. 356-9 at 1-18)). There is no reason to suspect his belief is anything other than wishful thinking. Moreover, even if the last-proposed agreement had been accepted, Baez realistically faced a

---

[9] By the time of trial, Meyer was Baez's counsel. In opening statement, he conceded Baez's guilt as to the elements of Counts 2 and 3 in order to focus the jury's attention on drug quantity and the element of conspiracy in Count 1. The Court has already determined that his strategy was reasonable in view of the voluminous evidence of Baez's drug dealing. It has also determined that counsel's strategy was beneficial to Baez; the jury rejected the prosecution's theory that Baez was responsible for 5 kilograms or more of cocaine, finding him responsible for more than 500 grams but less than 5 kilograms. *See* Order (Doc. 352) at 12-13.

sentence of 135-168 months, not ten years as he claims.[10]

If the principal evidence used against Baez at trial came from Baez himself or from persons implicated by Baez, who then turned around and debriefed or testified against him, then this claim would be on better footing. But, contrary to his insistence otherwise, Domingo Baez was not the source of the United States' evidence against Domingo Baez. Of the 14 persons whose statements Hoovestal presented to Baez with the opinion letter, only three – Ricky Collazo, Teri Kurth, and Conor Urion – gave interviews after Baez gave his first statement on January 14, 2009, and also testified against Baez at trial. The United States knew of those persons' involvement independently of Baez's debriefing. *See, e.g.*, Hoovestal to Baez July 20, 2009, App. Vol. 1 Tab 10 at 2 ¶ 9, 4 ¶¶ 18-20, Tab 11 at 3 ¶ 10, 7 ¶ 28 (Broderick and Cederberg re: Ricky Collazo and Kurth); Tab 14 at 2 ¶ 7, 3-4 ¶¶ 13-17, 4-5 ¶¶ 19-25, 7 ¶¶ 41, 48 (Gutierrez-Paz re: Collazo), Supp. at 2-3 (Gutierrez-Paz re: Urion). Baez was fairly advised by counsel that the United States' evidence against him did not come from Baez himself.

Given the record of correspondence between counsel and Baez, as well as the evidence shown by Hoovestal to Baez, there is no grist for the mill of

---

[10] Baez misstates the terms of the proposed agreement. It required him to admit he was responsible for five kilograms or more of cocaine. Proposed Agreement (Doc. 356-9) at 2 ¶ 4, 4-5 ¶ 6. With no § 851 Information, the mandatory *minimum* penalty would have been ten years. 21 U.S.C. § 841(b)(1)(A)(ii). A ten-year sentence was neither offered nor recommended. Proposed Agreement at 10-12 ¶ 12. Nor did the United States promise to file a motion under U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35(b). *Id.* at 14-17 ¶ 18.

ineffective assistance under *Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376 (2012), or *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399 (2012). Baez was advised of the strength of the prosecution's case, the limited parameters of its willingness to bargain, and the independent sources of its evidence. Not one of Baez's counsel refused or failed to seek a favorable plea agreement. Counsel may have refused or failed to seek an agreement on the terms Baez wanted, but he wanted the moon and other things no defendant is permitted to obtain: "Also I want my criminal history left out of the P.S.I. and I don't want to hear that [the prosecutor] can't do it."

Similarly, there is no viable due process claim against the prosecution. The prosecution certainly realized some benefit from Baez's cooperation, but its benefit did not obligate it to offer Baez a plea bargain that met his requirements. Moreover, nothing the prosecution did created such an obligation. *See* Immunity Letter (Doc. 105-1) at 1; Order (Doc. 352) at 19-25 & n.2.

Baez debriefed and testified before the grand jury in the hope of obtaining favorable treatment from the United States. The United States offered on several occasions to make a plea agreement, but it never offered or accepted the terms Baez wanted – in essence, a guarantee that his sentence would be similar to those imposed on the low-level users whom he supplied. He chose to go to trial rather than accept the terms offered by the United States. In fact, he benefitted from that decision, because trial counsel persuaded the jury to find a lesser drug amount than

15

the United States attempted to prove. Baez's Claim B alleges ineffective assistance against that attorney because he failed to get the United States to agree to an even lesser charge and sentence. Claim B is denied.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Some of Baez's claims misconstrue the applicable law. These claims include his contentions that the United States did not give him anything in exchange for his grand jury testimony; that he should have been acquitted because the jury did not find the United States proved beyond a reasonable doubt the drug quantity it alleged; that counsel should have challenged the counting of a misdemeanor conviction by relying on an inapplicable amendment to the sentencing guidelines; that counsel should have objected to the lack of racial diversity in the venire and to

the long distances some jurors had to travel to reach the courthouse; and that counsel should have objected that Judge Shanstrom did not meet, as to the § 851 Information, notice requirements that do not exist. Because neither prong of the *Strickland* test is met by these claims, *see Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984), a COA is not warranted.

Several of Baez's claims allege that counsel was ineffective for failing to challenge matters that were established by virtually unassailable evidence. These claims include his contentions that counsel should not have conceded guilt and should have pursued a favorable plea agreement; should not have stipulated that the substance in certain government exhibits was cocaine or that the cell phone records and wiretap recordings were admissible; should have claimed the wiretap was authorized four days before it was actually authorized and then moved to suppress evidence obtained in the last four days of the tap; should have contested or refuted, by unidentified means other than cross-examination at trial, alienated distributors' allegations about the quantities of drugs attributable to Baez; and should have challenged Judge Shanstrom's failure to rule on objections to the presentence report when Judge Shanstrom did rule on objections. Again, as neither prong of the *Strickland* test is met by these claims, a COA is not warranted.

As to other claims, the facts Baez alleges, in light of the record, do not support an inference that he was prejudiced. These claims include his contentions

17

that counsel should not have encouraged him to debrief; that counsel should have moved to suppress two slips of paper; should have objected to his absence from a discussion about a note from the jury; should have moved to sever his trial from his co-defendants' trial based on his immunity agreement; should have objected to the inclusion in the presentence report of evidence presented at trial; and should have objected to Judge Shanstrom's failure to articulate findings on the § 851 Information even though the Information played no role at sentencing. Even assuming the first prong could be met, the prejudice prong of the *Strickland* test is not met by these claims. A COA is not warranted. *See Strickland*, 466 U.S. at 697.

Finally, some of Baez's claims are redundant of claims denied on other grounds. These claims include Baez's contentions that counsel should have objected to the presentence report's inclusion of information relevant to drug amounts, criminal history, and other matters he challenges elsewhere; and his claims of ineffective assistance by appellate counsel and cumulative ineffective assistance. A COA is not warranted as to these claims.

Even under the relatively low standard imposed by 28 U.S.C. § 2253(c)(2), none of Baez's claims has any substance. His view of the facts and litigation of his case is not realistic. There is no reason to encourage further proceedings. A COA will be denied on all issues.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Baez's motion to clarify (Doc. 362) is DENIED.

2. Baez's claim regarding a favorable plea agreement, Mot. § 2255 (Doc. 344) at 5 ¶ 12B, 14 ¶ 12L, is DENIED;

3. All claims having been denied, Baez's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 344) is DENIED;

4. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Baez files a Notice of Appeal;

5. The Clerk of Court shall ensure that all pending motions in this case and in CV 13-145-BLG-DWM are terminated and shall close the civil file by entering judgment in favor of the United States and against Baez.

DATED this 25th day of June, 2014.

Donald W. Molloy
United States District Court